08718                                                                                                              KWR/MLM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN ZANG, ) | |
| ) | |
| Plaintiff, ) | Case No.: 08-cv-_____ |
| ) | Judge _____ |
| v. ) | Magistrate Judge _____ |
| ) | |
| ALLIANCE FINANCIAL SERVICES OF ) | JURY DEMANDED   FILED: JUNE 11, 2008 |
| ILLINOIS, LTD. and ) | 08CV3370 |
| BURTON STERN, ) | JUDGE ST. EVE |
| ) | MAGISTRATE JUDGE MASON |
| Defendants. ) | |

## COMPLAINT                                    TC

COMES NOW Plaintiff John Zang, ("Zang") by and through his undersigned counsel, states the following for his Complaint against Alliance Financial Services of Illinois, Ltd. ("Alliance") and Burton Stern ("Stern"):

## PARTIES

1. Zang is a resident of Lexington, Michigan. At all relevant times, Zang was interested in purchasing a company to own and manage.

2. Alliance is an Illinois corporation with its principal place of business in Chicago, Illinois. Alliance is in the business of providing consulting and accounting services to locate a company to be purchased for individuals who are interested in acquiring a business and arrange the financing for the purchase.

3. Upon information and belief, Stern is a resident of Chicago, Illinois and the President of Alliance.

## JURISDICTION AND VENUE

4. Jurisdiction is predicted upon a federal question under 28 U.S.C. §§ 1331, 1357 in that this is an action involving a federal securities fraud claim under 15 U.S.C. § 78j and 17 C.F.R. § 240.10B-5 and supplemental jurisdiction of Illinois claims under 28 U.S.C. § 1367.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because a substantial portion of the events giving rise to the controversy occurred within this District.

## FACTS

6. On or about June 19, 2007, Zang first contacted Alliance in response to an advertisement that it placed on the website www.bizbuysell.com that promised companies "for acquisition with NO principal payments" and that "Alliance will provide Buyer with Investment Bankers". See BizBuySell Advertisement, attached hereto and marked as Exhibit A.

7. Shortly thereafter, on or about June 28, 2007, Zang traveled to Alliance's office and met with Stern. At that meeting, Stern represented that Alliance would use its best efforts to locate a company for Zang to purchase and, after a suitable company was located and accepted a letter of intent to purchase from Alliance on Zang's behalf, Alliance would arrange the financing for the purchase by obtaining a bank loan and using the proceeds to purchase life insurance sureties. Attached hereto and marked as Exhibit B is a true and correct copy of the diagram that Stern gave to Zang at the meeting to explain the financing that Alliance would obtain for Zang. See Exhibit B.

8. Stern further explained that, once Zang purchased a company through Alliance, Zang would be required to pay Alliance a fee that was three percent (3%) of the closing price of the business. However, the fee was only due if and when Zang closed a business purchase. Stern also

gave Zang literature that stated that Alliance "do[es] NOT receive, nor handle, your funds prior to closing." Finally, Stern informed Zang at the meeting that Zang would need to provide Alliance with a $5,000.00 "refundable" retainer fee if he proceeded.

9. Based on the Parties' June 28, 2007 meeting, Zang delivered to Stern the $5,000.00 refundable retainer fee.

10. However, despite Stern's representations that Alliance would locate and finance potential companies for Zang to purchase, Alliance merely sent Zang a few outdated listings for companies that he found through publicly available internet searches. Moreover, only one of those companies met the cash flow criteria that Stern informed Zang a potential acquisition should meet. Even worse, this company did not meet Zang's geographic criteria as it was located in Southern Texas, whereas Zang had informed Stern that he wanted to purchase a company in the Midwest and Stern agreed to locate a Midwest company for acquisition.

11. Notwithstanding Stern's lack of diligence in locating a suitable target, Zang personally located two companies (i.e., Frontline Manufacturing and Pine Tech) and instructed Alliance to pursue purchasing each.

12. At Stern's insistence, Zang gave Alliance a down payment in the amount of one tenth of a percent (.1%) of their purchase price that Stern stated would be returned to Zang at closing. Stern represented to Zang that the money was necessary because the finance bankers who would submit his proposal for a loan to the banks needed money upfront to start the life insurance policy financing process.

13. Accordingly, on or about July 19, 2007, Zang delivered a check made out to Stern

3

personally for $14,500.00 for the Frontline deal after he and Frontline executed a letter of intent. However, after Zang delivered the check, Stern proceeded to stall the Frontline deal.

14. Eventually, on or about December 18, 2007, Stern sabotaged the Frontline deal by refusing to submit a loan request to Alliance's banks, which were potential financers of the Frontline purchase. Stern claimed that he refused to submit the loan request because the amount he had proposed that Zang offer to purchase Frontline for was too high. Stern based this re-evaluation on information concerning Frontline's owner's salary. However, this information was available to Stern prior to the submission of the $14,500.00 check and had been used by Stern in his original valuation of Frontline. Finally, despite the fact that Stern's own valuation and refusal caused the purchase to fall through, Stern claimed that he was not obligated to return any of the funds advanced by Zang because a closing did not take place.

15. In the meantime, Zang located a second company, Pine Tech, that he was interested in purchasing. On or about August 16, 2007, Stern induced Zang to give him a check made out to "Mid America Company" for $18,000.00, which was for Alliance's use to initiate the financing and represented one tenth of a percent (.1%) of the Pine Tech deal. Zang was not able to determine any more information concerning the whereabouts of Mid America Company. The $18,000.00 check was only to be cashed after Zang had a letter of intent that was executed by Pine Tech. However, Alliance did not even submit a letter of intent to Pine Tech on Zang's behalf before the potential purchase fell apart. Nevertheless, Stern cashed the Pine Tech check on or about August 17, 2007.

16. Alliance's requirement that Zang give it one tenth of a percent (.1%) of a company's purchase price was contrary to Alliance's bizbuysell.com advertisement, the literature that Stern

4

provided to Zang, and the oral representations made by Stern during the Parties' June 28, 2007 meeting.

17.     Following December 2007, Stern became progressively more unresponsive to Zang. Stern's unresponsiveness culminated in March 2008 when Stern refused to send a written request for information and a statement of Zang's financial backing to the broker of a fabricated metal products company that Zang located.

18.     Accordingly, Zang demanded the return of the $37,500.00 from his refundable retainer and the money that he had given Stern for the Frontline Manufacturing and Pine Tech deals that never came to fruition.

19.     Stern refused to return Zang's $37,500.00.

## COUNT I
**Federal Securities Fraud—Violation of the Securities Exchange Act § 10(b) and Rule 10(b)**

20.     Zang incorporates and re-alleges paragraphs 1 through 18 hereof for paragraph 19 of this Count I.

21.     Alliance and Stern made a material misstatement or committed a deceptive act when Stern: (1) induced Zang to give Alliance a $5,000.00 retainer by stating that it was (a) refundable and (b) Alliance would use its best efforts to locate a company for Zang to purchase and provide adequate financing; (2) gave Zang literature that stated that Alliance "do[es] NOT receive, nor handle, your funds prior to closing"; (3) induced Zang to give him personally a check for $14,500.00 for the Frontline deal by stating that it was for financing and would be returned to Zang at the closing of the purchase of the business, (4) delayed and ultimately killed the Frontline deal by refusing to present it to Alliance's lender banks, (5) induced Zang to give him a check for $18,000.00 made out

5

to Mid America Company for the Pine Tech deal by stating that it was for financing and would be returned to Zang at closing, (6) failed to draft or execute a letter of intent for the Pine Tech deal and failed to present it to Alliance's lender banks, (7) faxed Zang a list of companies in response to Zang's demands that Stern and Alliance return Zang's $37,500.00, and (8) repeatedly created the situation whereby Zang would deliver to him funds that were to be returned at closing, but would then refuse to take some necessary step for the closing to take place, thus effectively preventing that the money would ever be returned.

22.   Zang reasonably relied on Stern's material misstatements and deceptive acts by delivering to him a $5,000.00 retainer, $14,500.00 for the Frontline deal, and $18,000.00 for the Pine Tech deal.

23.   Stern's material misstatements and deceptive acts were made with an intent to induce Zang to forego $37,500.00 to Stern and Alliance.

24.   Zang's reliance was the proximate cause of his loss of $37,500.00.

25.   Stern's material misstatements and deceptive acts were made in connection with the purchase or sale of a security, specifically, life insurance sureties.

Wherefore, Plaintiff John Zang prays for judgment in his favor and against Defendants Alliance Financial Services of Illinois, Ltd. and Burton Stern on Count I of the Complaint in an amount of $37,500.00 and for such other and further relief as this Court deems just.

## COUNT II
### Violation of the Illinois Consumer Fraud Act

26.   Zang incorporates and re-alleges paragraphs 1 through 24 hereof for paragraph 25 of this Count II.

27. Alliance and Stern committed material unfair or deceptive acts when Stern: (1) induced Zang to give Alliance a $5,000.00 retainer by stating that it was (a) refundable and (b) Alliance would use its best efforts to locate a company for Zang to purchase and provide adequate financing; (2) gave Zang literature that stated that Alliance "do[es] NOT receive, nor handle, your funds prior to closing"; (3) induced Zang to give him personally a check for $14,500.00 for the Frontline deal by stating that it was for financing and would be returned to Zang at closing, (4) delayed and ultimately killed the Frontline deal by refusing to present it to Alliance's lender banks, (5) induced Zang to give him a check for $18,000.00 made out to Mid America Company for the Pine Tech deal by stating that it would not be cashed unless or until Zang received an executed letter of intent from Pine Tech and stating that it was for financing and would be returned to Zang at closing, (6) failed to draft or execute a letter of intent for the Pine Tech deal and failed to present it to Alliance's lender banks, (7) faxed Zang a list of companies in response to Zang's demands that Stern and Alliance return Zang's $37,500.00, and (8) repeatedly created the situation whereby Zang would deliver to him funds that were to be returned at closing, but would then refuse to take some necessary step for the closing to take place, thus effectively preventing that the money would ever be returned.

28. Alliance and Stern intended that Zang rely upon their material unfair or deceptive acts and so caused Zang to deliver to Stern a $5,000.00 retainer, $14,500.00 for the Frontline deal, and $18,000.00 for the Pine Tech deal.

29. Alliance's and Stern's materially deceptive acts occurred in the course of conduct involving commerce.

30. As a direct and proximate result of Alliance's and Stern's materially deceptive acts,

Zang experienced the following damages: (1) $37,500.00; (2) the attorneys' fees and costs associated with this cause of action; (3) lost time; and (4) lost business acquisition opportunities.

Wherefore, Plaintiff John Zang prays for judgment in his favor and against Defendants Alliance Financial Services of Illinois, Ltd. and Burton Stern on Count II of the Complaint in an amount of $37,500.00 plus punitive damages, attorneys' fees and costs, and for such other and further relief as this Court deems just.

### COUNT III
### Common Law Fraud

31. Zang incorporates and re-alleges paragraphs 1 through 29 hereof for paragraph 30 of this Count III.

32. Alliance and Stern made false statements of material fact and committed false acts when Stern: (1) induced Zang to give Alliance a $5,000.00 retainer by stating that it was (a) refundable and (b) Alliance would use its best efforts to locate a company for Zang to purchase and provide adequate financing; (2) gave Zang literature that stated that Alliance "do[es] NOT receive, nor handle, your funds prior to closing"; (3) induced Zang to give him personally a check for $14,500.00 for the Frontline deal by stating that it was for financing and would be returned to Zang at the closing, (4) delayed and ultimately killed the Frontline deal by refusing to present it to Alliance's lender banks, (5) induced Zang to give him a check for $18,000.00 made out to Mid America Company for the Pine Tech deal by stating that it would not be cashed unless or until Zang received an executed letter of intent from Pine Tech and stating that it was for financing and would be returned to Zang at closing, (6) failed to draft or execute a letter of intent for the Pine Tech deal and failed to present it to Alliance's lender banks, (7) faxed Zang a list of companies in response to

Zang's demands that Stern and Alliance return Zang's $37,500.00, and (8) repeatedly created the situation whereby Zang would deliver to him funds that were to be returned at closing, but would then refuse to take some necessary step for the closing to take place, thus effectively preventing that the money would ever be returned.

33. Alliance and Stern knew that Stern's statements and actions were false and they were made with the intention that Defendants receive (1) a $5,000.00 retainer, (2) $14,500.00 for the Frontline deal, and (3) $18,000.00 for the Pine Tech deal.

34. Alliance and Stern intended that Zang rely upon Stern's misrepresentations and false actions and so caused Zang to reasonably rely on Stern's misrepresentations and false statements and acts by delivering to Stern a $5,000.00 retainer, $14,500.00 for the Frontline deal, and $18,000.00 for the Pine Tech deal.

35. As a direct and proximate result of Alliance's and Stern's misrepresentations and false statements and acts, Zang experienced the following damages: (1) $37,500.00; (2) the attorneys' fees and costs associated with this cause of action; (3) lost time; and (4) lost business acquisition opportunities.

Wherefore, Plaintiff John Zang prays for judgment in his favor and against Defendants Alliance Financial Services of Illinois, Ltd. and Burton Stern on Count III of the Complaint in an amount of $37,500.00 plus punitive damages, costs, and for such other and further relief as this Court deems just.

**COUNT IV**
**Conversion**

35. Zang incorporates and re-alleges paragraphs 1 through 34 hereof for paragraph 35 of

this Count IV.

36. Alliance and Stern wrongfully continued to assume control and domination over Zang's $14,500.00 for Frontline and $18,000.00 for Pine Tech after the deals fell through. Moreover, Alliance and Stern wrongfully continued to assume control and domination over Zang's $5,000.00 refundable retainer after Zang informed Stern that he no longer wanted to use Allaince's services.

37. Zang has the right to the $37,500.00.

38. Zang's right to immediate possession of the $37,500.00 is absolute and unconditional.

39. Zang made a demand to Alliance and Stern on April 1, 2008 and May 14, 2008 for possession and return of his $37,500.00.

40. Contrary to this demand, Alliance and Stern wrongfully and without authorization assumed control, domination, and ownership over Zang's $37,500.00.

41. As a result of Alliance's and Stern's wrongful conversion of Zang's funds, Zang has suffered damages in the amount of $37,500.00.

Wherefore, Plaintiff John Zang prays for judgment in his favor and against Defendants Alliance Financial Services of Illinois, Ltd. and Burton Stern on Count IV of the Complaint in an amount of $37,500.00 plus costs, and for such other and further relief as this Court deems just.

## COUNT V
### Breach of Fiduciary Duty

42. Zang incorporates and re-alleges paragraphs 1 through 41 hereof for paragraph 42 of this Count V.

43. Stern owed Zang a fiduciary duty based on their relationship whereby Stern was acting in a consulting, accounting, and financial advisor capacity on Zang's behalf. Moreover, the facts show that Stern was entrusted with Zang's business and financial affairs, and Zang reposed his trust and confidence in Stern.

44. As such, a fiduciary relationship arose between Stern and Zang as a matter of law and fact.

45. Stern breached his fiduciary duties to Zang when he: (1) induced Zang to give him $37,500.00 by stating that Zang would get the money back; (2) delayed and ultimately killed the Frontline deal; (3) failed to draft or execute a letter of intent for the Pine Tech deal and failed to present it to Alliance's lender banks, (4) did not seek to locate a company for Zang aside from sending Zang an outdated list of companies from publicly available internet sites; (5) refused to send a written request for information and statement of Zang's financial backing to the broker of a fabricated metal products company; and (6) refused to return Zang's $37,500.00.

46. As a direct and proximate result of Stern's breach of his fiduciary duties, Zang has been deprived of the benefits of his $37,500.00 and was been prevented from purchasing Frontline, Pine Tech, and the fabricated metal products company.

Wherefore, Plaintiff John Zang prays for judgment in his favor and against Defendants Alliance Financial Services of Illinois, Ltd. and Burton Stern on Count V of the Complaint in an

amount of $37,500.00 plus interest from April 1, 2008 through the date of judgment, punitive damages, costs, and for such other and further relief as this Court deems just.

### COUNT VI
### False Advertising—Violation of the Lanham Act § 43(a) and 15 U.S.C. § 1125(a)(1)

47. Zang incorporates and re-alleges paragraphs 1 through 46 hereof for paragraph 47 of this Count VI.

48. Alliance made representations of fact in commercial advertising about its products and services when it advertised that it: provided "[l]istings of[p]rofitable [m]anufactuering and [d]istribution [c]ompanies for acquisition with NO principal payments"; that "Alliance will provide Buyer with Investment Bankers"; and that Alliance "do[es] NOT receive, nor handle, your funds prior to closing."

49. These representations were false or misleading, however, because Alliance: merely provides its customers with outdated listings of companies from publicly available internet sites that do not meet the customer's cash flow or geographic criteria, if at all; refuses to take its customer's deals for acquiring companies to its investment bankers or even complete initial paperwork to begin the process of gathering financial information about a potential company for sale in at least one instance; and requires a retainer fee and one tenth of a percent (.1%) of a company's purchase price prior to closing.

50. These misrepresentations were material in that they were likely to influence purchasing decisions of Alliance's purported consulting, accounting, and financial advisor services.

51. The misrepresentations actually deceived Zang in that Alliance caused Zang to use its consulting, accounting, and financial advisor services and deliver to Stern a $5,000.00 retainer,

$14,500.00 for the Frontline deal, and $18,000.00 for the Pine Tech deal.

52. Alliance injected the false or misleading advertising into interstate commerce by posting on the website www.bizbuysell.com and by supplying potential consumers (including out-of-state consumers such as Zang of Michigan) of its services with false literature regarding its services when they visit its office in Chicago, Illinois.

53. Zang has been injured by the misrepresentations in the amount of $37,500.00 plus lost time and lost business acquisition opportunities.

Wherefore, Plaintiff John Zang prays for judgment in his favor and against Defendants Alliance Financial Services of Illinois, Ltd. and Burton Stern on Count VI of the Complaint in an amount of $37,500.00, punitive damages, costs, and for such other and further relief as this Court deems just.

## COUNT VII
### Violation of the Illinois Deceptive Trade Practices Act

54. Zang incorporates and re-alleges paragraphs 1 through 53 hereof for paragraph 54 of this Count VII.

55. Alliance advertised goods with the intent not to sell them as advertised when it advertised that it: provided "[l]istings of [p]rofitable [m]anufactuering and [d]istribution [c]ompanies for acquisition with NO principal payments"; that "Alliance will provide Buyer with Investment Bankers"; and that Alliance "do[es] NOT receive, nor handle, your funds prior to closing."

56. Alliance's goods were not as advertised, however, because Alliance: merely provides its customers with outdated listings of companies from publicly available internet sites that do not meet the customer's cash flow or geographic criteria, if at all; refuses to take its customer's deals for

acquiring companies to its investment bankers or even complete initial paperwork to begin the process of gathering financial information about a potential company for sale in at least one instance; and requires a retainer fee and one tenth of a percent (.1%) of a company's purchase price prior to closing.

57.   These advertisements were made with the intent that consumers use Alliance's use its consulting, accounting, and financial advisor services, deliver $5,000.00 retainers to it, and deliver one tenth of a percent (.1%) of a company's purchase price to Alliance prior to closing.

58.   Zang has been injured by Alliance's goods not being as advertised in the amount of $37,500.00 plus lost time and lost business acquisition opportunities.

Wherefore, Plaintiff John Zang prays for judgment in his favor and against Defendants Alliance Financial Services of Illinois, Ltd. and Burton Stern on Count VI of the Complaint in an amount of $37,500.00, punitive damages, costs, and for such other and further relief as this Court deems just.

## COUNT VIII
### Promissory Estoppel

59.   Zang incorporates and re-alleges paragraphs 1 through 58 hereof for paragraph 59 of this Count VIII.

60.   On or about June 28, 2007, Stern and Alliance made a clear and unambiguous promise to Zang that: (1) Alliance would use its best efforts to locate a company for Zang to purchase; (2) Alliance would arrange the financing for the purchase by obtaining a bank loan and using the proceeds to purchase life insurance sureties; (3) Zang would be required to pay Alliance a fee that was three percent (3%) of the closing price of the business, but the fee was only due if and

when Zang closed a business; (4) Alliance "do[es] NOT receive, nor handle, [Zang's] funds prior to closing"; and Zang's $5,000.00 retainer fee was refundable.

61. Zang relied on Stern's and Alliance's promise by using Alliance's consulting, accounting, and financial advisor services and delivering to Stern a $5,000.00 retainer, $14,500.00 for the Frontline deal, and $18,000.00 for the Pine Tech deal.

62. Zang's reliance was expected and foreseeable by Stern and Alliance.

63. Zang relied on Stern's and Alliance's promise to Zang's detriment because Stern and Alliance have kept and refused to return Zang's $37,500.00, delayed and ultimately killed the Frontline deal, failed to draft a letter of intent for the Pine Tech deal and failed to present it to Alliance's lender banks, did not seek to locate a company for Zang aside from sending Zang an outdated list of companies from publicly available internet sites that did not meet the Parties' agreed cash flow and geographic criteria, and refused to send a written request for information and statement of Zang's financial backing to the broker of a fabricated metal products company.

64. Enforcement of Stern's and Alliance's promise to Zang is necessary to avoid injustice.

Wherefore, Plaintiff John Zang prays for judgment in his favor and against Defendants Alliance Financial Services of Illinois, Ltd. and Burton Stern on Count VII of the Complaint in an amount of $37,500.00 plus interest, and for such other and further relief as this Court deems just.

Respectfully submitted,<br>
JOHN ZANG<br><br>
By: /s/ Michelle L. Martin<br>
One of his attorneys

Karl W. Roth
Michelle L. Martin  (ARDC# 6280554)
THE ROTH LAW GROUP, LLC
Attorneys for Plaintiff
111 W. Washington St., Ste. 1437
Chicago, IL 60602
(312) 419-9599
Fax: (312) 419-9559
kwr@rothlawgroup.com
mlm@rothlawgroup.com

# BizBuySell  The Internet's Largest Business for Sale Marketplace

In alliance with The Wall Street Journal's StartupJournal.com 

HOME | BUY A BIZ | SELL YOUR BIZ | FIND A FRANCHISE | VALUE A BIZ | FIND A BROKER | FOR BROKERS

Home > Established Business Search > Search Results > Ad Details

## Ad Details

08CV3370
JUDGE ST. EVE
MAGISTRATE JUDGE MASON

**Profitable Manufacturing and Distribution Co's for Aquisition**
Same
Cook County
Greater Midwest, South WE, Illinois

TC

*How much is this business really worth?*

**Financials** (glossary of terms)
- Asking: Not Disclosed
- Gross: $3,000,000 - 50,000,000
- Cash Flow: $1,000,000 - 10,000,000
- FF&E: various (included in the asking price)
- Inventory: various (included in the asking price)
- Real Estate: various (included in the asking price)

**Business Summary**
Alliance Financial Services Ltd. Listings of Profitable Manufacturing and Distribution Companies for aquisition with NO principal payments. We provide the Accounting and Business Plan

**About the Sale**
Financing: Alliance will provide Buyer with Investment Bankers

Contact the seller about this business >   [REPLY TO THIS AD]

**Business listed by**
Burton Stern
Phone: 773 697 6869

**Contact the seller**
To inquire about this business for sale, click the Reply button below

[REPLY TO THIS AD]

Ad # 125561
Type: Established business
Mfg. - Miscellaneous Manufacturing
Wholesale/Dist. - Durable Goods

**Ad tools**
- printer-friendly version
- email ad to a friend

recommended resources
**Want To Analyze This Business?**
- Compare with other businesses
- Conduct comprehensive valuations
- Find the problems
- Learn what to ask the seller

[DOWNLOAD THIS LISTING]

**how to buy a good business at a great price**
Learn how to find & buy the right business. Expert tips, strategies & techniques covering the entire buying process. More info...

**Disclaimer**
The information in this listing has been provided by the seller stated above. BizBuySell has no stake in the sale of this business and has not independently verified any of such information and assumes no responsibility for its accuracy or completeness. Read the **disclaimer** before responding to any ad.

*Looking to Buy a Business?*

*BizBuySell*

○ Back to Search Results

*[handwritten: e-mailed for More info]*

*[handwritten: 6-19-07 cAlled me brief over sending fax]*

BizBuySell  advertise  terms & conditions  privacy policy  about us  contact us  site map

© 2007 BizBuySell.com® All rights reserved. | PARTNERS: LoopNet

**EXHIBIT A**

http://www.bizbuysell.com/cgi-bin/addetail?p=1&ss=1&i=YC&w=q&tab=eb&q=125561　　　　6/18/2007

