IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN ZANG, | ) |
| Plaintiff | ) No. 08 C 3370 |
| v. | ) |
| | ) Hon. Michael T. Mason |
| ALLIANCE FINANCIAL SERVICES OF ILLINOIS, LTD. and BURTON STERN, | ) |
| Defendants | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendants' motion [24] under Fed. Rs. Civ. P. 12(b)(6) and 12(b)(1) to dismiss plaintiff's complaint and memorandum of law in support [25]. Plaintiff has filed a response [29], and defendants have filed a reply [37]. The Court heard oral arguments on the motion on 1/29/09, but held its ruling in abeyance pending the parties' settlement discussions. Based on plaintiff's representation that he is no longer interested in pursuing such discussions at this time, the Court has lifted the stay on the motion [44].

**I.     BACKGROUND**

The complaint [1] sets forth the following allegations relevant to the pending motion. Plaintiff John Zang ("plaintiff" or "Zang") is a resident of Lexington, Michigan, and at "all relevant times was interested in purchasing a company to own and manage." (Compl. ¶ 1.) Defendant Alliance Financial Services of Illinois, Ltd. ("Alliance") is an Illinois corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 2.)

1

Defendant Burton Stern ("Stern") is a resident of Chicago, Illinois and is the president of Alliance. (*Id.* ¶ 3.) Defendants are "in the business of providing consulting and accounting services" to assist individuals in locating and financing businesses for purchase. (*Id.* ¶ 2.)

On or about June 19, 2007, Zang contacted Alliance in response to an advertisement Alliance placed on a website that "promised companies for acquisition with NO principal payments" and that "Alliance will provide Buyer with Investment Bankers." (Compl. ¶ 6.) Later that month, Zang traveled to Alliance's Chicago office and met with Stern. (*Id.* ¶ 7.) At that meeting, Stern represented that Alliance would use its best efforts to locate a company for Zang to purchase and would arrange the financing for the purchase by obtaining a bank loan and using the proceeds to purchase life insurance sureties. (*Id.*) A copy of the diagram Stern gave Zang at this meeting to explain the financing Alliance would obtain for Zang is attached to the complaint at Exhibit B. Stern also stated that once Zang purchased a company through Alliance, Zang would pay Alliance a fee of 3% of the closing price of the business, but that such a fee would be due only if Zang closed on a business purchase. (*Id.* ¶ 8.) Stern requested a $5,000 "refundable" retainer, which Zang paid. (*Id.* ¶¶ 8, 9.)

Despite Stern's representations that Alliance would locate and finance potential companies for Zang to purchase, Alliance sent Zang only a few outdated listings for companies found through publicly available internet searches. (Compl. ¶ 10.) Just one of those companies met the cash flow criteria Stern informed Zang a potential acquisition should meet. (*Id.*) However, this company was located in Southern Texas. (*Id.*) Zang had previously informed Stern that he wanted to purchase a company in the

Midwest and Stern agreed to locate a Midwest company for acquisition.  (*Id.*)

Zang himself located two companies and instructed Alliance to pursue purchases of each.  (Compl. ¶ 11.)  At Stern's insistence, Zang gave him checks for $14,500.00, and $18,000.00, supposedly as down payments for the purchases of these companies and to fund Alliance's efforts to secure financing for the deals.  (*Id.* ¶¶ 12-15.)  Ultimately, neither deal was consummated, and Stern refused to refund any portion of the amounts, totaling $37,500.00, that Zang had paid.  (*Id.* ¶¶ 18-19.)

On June 11, 2008, Zang filed the pending complaint against Alliance and Stern [1].  The complaint alleges eight counts, all but two of which are based on Illinois state common and statutory law (Counts II-V, VII-VIII).  As for the two counts asserted under federal law, Count I asserts defendants violated Section 10(b) of the Securities Exchange Act because their "material misstatements and deceptive acts were made in connection with the purchase or sale of a security, specifically, life insurance sureties." (Compl. ¶ 25.)  Count VI asserts defendants violated the Lanham Act by making "false" and "misleading" "representations of fact in commercial advertising about [Alliance's] products and services." (*Id.* ¶¶ 49, 48.)

Zang asserts this Court has federal question jurisdiction under 28 U.S.C. § 1331 over Counts I and VI and supplemental jurisdiction over the Illinois state law claims under 28 U.S.C. § 1367.  (Compl. ¶ 4.)

## II.     LEGAL STANDARD

Defendants have moved to dismiss Counts I and VI under Rule 12(b)(6) and the remaining counts under Rule 12(b)(1).

A complaint will withstand a motion to dismiss under Rule 12(b)(6) "if it provides a short and plain statement of the claim showing that the pleader is entitled to relief that is also sufficient to provide the defendant with fair notice of the claim and its basis." *INEOS Polymers Inc. v. BASF Catalysts*, 553 F.3d 491, 497 (7th Cir. 2009) (citations and quotations omitted). To demonstrate that he is entitled to relief, however, a plaintiff must show through his allegations that it is plausible, rather than merely speculative, that he is entitled to relief. *Id.* In ruling on a motion to dismiss for failure to state a claim, the court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Id.* Where, as here, a motion to dismiss under Rule 12(b)(1) contends that the complaint's allegations are facially insufficient to show jurisdiction, the applicable standard mirrors that applied under Rule 12(b)(6). *Royal Towing, Inc. v. City of Harvey*, 350 F. Supp. 2d 750, 752 (N.D. Ill. 2004); *see also Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

## III.     DISCUSSION

Defendants argue that plaintiff has failed to state a federal cause of action under either Count I or Count VI. Defendants also contend that because no federal cause of action exists, this Court should decline to exercise supplemental jurisdiction over plaintiff's pendent state law claims.

### A. Count I - Securities Exchange Act Claim

Defendants argue that plaintiff fails to state a claim under the Securities Exchange Act because "life insurance sureties" are not "securities" for purposes of the Act. (Mem. at 3-4.) Plaintiff responds that the mere absence of the words "life insurance securities" in the financing diagram Stern provided to plaintiff (*see* Compl. at Ex. B) does not mean defendants were not dealing with "securities" as defined under the Act. (Resp. at 4-5.) Plaintiff also argues that because defendants presented a plan to use "viatical settlements" as an "investment vehicle," defendants' conduct implicates "investment contracts" and is thus regulated by the Act. (Resp. at 6-8.) In their reply, defendants contend plaintiff's complaint fails to allege anything remotely related to defendants' use of viatical settlements, and that because plaintiff cannot point to any authority qualifying life insurance sureties as securities under the Act, Count I should be dismissed with prejudice. (Reply at 2-3.)

A reading of the complaint reveals that plaintiff fails to allege defendants planed to use viatical settlements to finance plaintiff's purchase of a business. In fact, the complaint does not allege a single fact related to viatical settlements. With respect to defendants' financing plan, plaintiff alleges only that defendants would "arrange the financing for [plaintiff's] purchase by obtaining a bank loan and using the proceeds to purchase life insurance sureties." (Compl. ¶ 7.) At oral arguments, plaintiff's counsel asked for leave to amend Count I.

Pursuant to Fed. R. Civ. P. 15(a)(2), this Court should "freely give" leave to amend, absent undue delay, undue prejudice, or other circumstances justifying denial. *See also Cannon v. Washington*, 418 F.3d 714, 720 (7th Cir. 2005). Plaintiff is granted

leave to amend Count I to include allegations regarding defendants' supposed use of viatical settlements, assuming plaintiff can make such allegations consistent with Fed. R. Civ. P. 11.  Should plaintiff wish to file such an amended complaint, he must do so by 5/22/09.  Should plaintiff file such an amended complaint, defendants' answer or other response to that amended complaint is due by 6/5/09.  We do not reach the issue at this time regarding whether any such amendment will properly state a claim under the Securities Exchange Act.

### B. Count VI - Lanham Act Claim

Defendants argue that plaintiff cannot state a claim under the Lanham Act because only a business competitor, not a consumer like plaintiff, has a right of action under that Act.  Plaintiff responds that the Act does not limit causes of action to competitors, but protects any plaintiff with an interest that is "commercial in nature – whether competitive (directly or indirectly) with defendants, or in the operation of some commercial activity, or to protect some other actual or anticipated commercial interest." (Resp. at 9, *quoting Swartz v. Schaub*, 826 F. Supp. 274, 276 (N.D. Ill. 1993) (Shadur, J.).)  Zang does not allege he is a competitor of defendants.  Instead, Zang contends his interest is more than a mere consumer's, because he was attempting to use defendants' services to purchase a business, and that in turn constitutes a "commercial activity" protected under the Act.  (Resp. at 9.)  In their reply, defendants argue that *Swartz* "only addressed a single facet of the commercial activity required to assert a claim under the Lanham Act."  (Reply at 3.)  Defendants also contend the Seventh Circuit has repeatedly and more recently held that to pursue a claim under the Act, a party must not only demonstrate it has a protectable interest, but must also assert a

"discernable competitive injury." (Reply at 4, *quoting Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999).)

There are two grounds for liability under the Lanham Act: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other devices, and (2) false representations in advertising concerning the qualities of goods or services. *See L.S. Heath & Son v. AT&T Info. Sys.*, 9 F.3d 561, 575 (7th Cir. 1993). As plaintiff made no allegations regarding misrepresentation of a trademark, his claim is properly classified as asserting false representations in advertising regarding the qualities of defendants' services.

To have standing to allege a false advertising claim under the Lanham Act, the plaintiff must assert a competitive injury, and under the law of this Circuit, such injury exists where plaintiff is a competitor of the defendant. *See, e.g., L.S. Heath & Son*, 9 F.3d at 575 (stating that party bringing a Lanham Act claim must assert "a discernible competitive injury" and holding that candy manufacturer lacked standing to raise a false advertising claim against computer company regarding computer company's advertising); *Johnny Blastoff*, 188 F.3d at 438 (corporation that created and marketed cartoon characters lacked standing to bring Lanham Act deceptive advertising claim against professional football league and owner of St. Louis Rams franchise where corporation "has never been part of the NFL in any manner, shape, or form"); *accord Goodloe v. National Wholesale Co.*, No. 03 C 7176, 2004 WL 1631728, *11 (N.D. Ill. July 19, 2004) (Filip, J.) ("To have standing to allege a false advertising claim under the Lanham Act, the plaintiff must assert a competitive injury – *i.e.*, the plaintiff must be a

7

competitor of the defendant.").

Here, it is clear that plaintiff, an individual interested in purchasing a company to own and manage, did not compete with defendants, who were in the business of providing consulting and accounting services to assist individuals in locating and financing businesses for purchase. (Compl. ¶¶ 1-2.) Plaintiff has not alleged any facts that even suggest he is or intended to be a competitor of defendants. Instead, plaintiff argues that because he intended to purchase defendants' services and use those services to purchase a business, he was engaged in a "commercial activity" protected under the Lanham Act.

Relying on the court's discussion in *Swartz,* Zang argues that a plaintiff has standing under the Lanham Act if its "reasonable interest to be protected" by the Act is "commercial in nature," such as when the interest involves "operation of some commercial activity." *Swartz,* 826 F. Supp. at 276. However, the *Swartz* court ultimately held that no such commercial interest existed there, where plaintiff consumer alleged defendant dealership made misrepresentations in connection with plaintiff's purchase of a car. *Id.* at 277. While Zang relies on *Swartz*' general discussion of the sort of "potential injury in commerce" the Lanham Act is meant to protect, *Swartz* did not actually hold that a purchase of services to facilitate the purchase of a business constitutes such a commercial interest. In fact, plaintiff fails to cite any authority supporting his argument that a purchase of services to facilitate the purchase of a business is a "commercial activity" protected by the Act. And as defendants note, the Seventh Circuit requires a "discernible *competitive* injury" to establish standing under the Lanham Act. *See, e.g., L.S. Heath & Son*, 9 F.3d at 575 (emphasis added); *Johnny*

*Blastoff*, 188 F.3d at 438 (emphasis added).

As a result, plaintiff has failed to establish that his injury is "competitive" in the sense that the Lanham Act requires it to be. Plaintiff claims that he was injured because defendants' services were not as defendants advertised. Plaintiff does not compete – directly or otherwise – with defendants. Extending Lanham Act coverage to plaintiff's claim would effectively federalize every contract for the sale of services related to a (potential or existing) non-competing business in which a buyer charges the seller with misrepresentation. This Court is loathe to so extend the law in the absence of any supporting authority. *Cf. Swartz*, 826 F. Supp. at 276 (holding plaintiff lacked standing under Lanham Act where "[e]ssentially, [plaintiff] would seek to federalize every contract for the sale of goods in which a buyer charges the seller with misrepresentation, and the law simply does not support that in a one-on-one transaction such as that involved here."); *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 213-14 (E.D. N.Y. 2006) (businesses and individuals who purchased advertising from newspapers that allegedly used fraudulent circulation numbers lacked standing to bring Lanham Act false advertising claim against newspapers). Because Zang's alleged injury is not redressable under the Lanham Act, Count VI is dismissed with prejudice for failure to state a claim upon which relief may be granted.

### C. Counts II-V, VII-VIII - State Law Claims

When a federal court has original jurisdiction over an action, the court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367(a) codifies the principle that federal and state law claims are part of the same case or controversy if they derive from a common nucleus of operative fact. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997). Under Section 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim under Section 1367(a) if the district court has dismissed all claims over which it has original jurisdiction.

While this Court has dismissed with prejudice plaintiff's Lanham Act claim under Count VI, the Court has granted plaintiff leave to file an amended Count I under the Securities Exchange Act by 5/22/09. In the event plaintiff fails to file such an amended complaint by that date, this Court will dismiss Count I with prejudice and will dismiss the remaining Counts of the complaint without prejudice for lack of subject matter jurisdiction under 28 U.S.C. § 1367(c)(3). *See Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1250 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.").

**IV.    CONCLUSION**

For the reasons stated above, defendants' motion [24] is granted in part and denied in part. Count VI, which purports to state a claim under the Lanham Act, is dismissed with prejudice. Plaintiff has leave to file an amended Count I under the Securities Exchange Act in accordance with this opinion by 5/22/09. Should plaintiff file such an amended complaint, defendants' answer or other response to that amended complaint is due by 6/5/09. Should plaintiff fail to file such an amended complaint, Count I will be dismissed with prejudice and the remaining Counts of the complaint will be dismissed without prejudice for lack of subject matter jurisdiction.

**ENTERED:**

*[signature: Michael T. Mason]*

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: May 7, 2009**