**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN ZANG, | ) | |
| | ) | |
| Plaintiff | ) | No. 08 C 3370 |
| | ) | |
| v. | ) | |
| | ) | Hon. Michael T. Mason |
| ALLIANCE FINANCIAL SERVICES OF | ) | |
| ILLINOIS, LTD. and TODD STERN, | ) | |
| estate of BURTON STERN, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Before the Court is defendants' motion to dismiss plaintiff's Second Amended Complaint [67] and memorandum of law in support [68]. Plaintiff has filed a response [71], and defendants have filed a reply [73]. For the reasons stated below, defendants' motion to dismiss the Second Amended Complaint is granted in part and denied in part.

**I.  Background**

In his Second Amended Complaint [63], plaintiff John Zang ("plaintiff" or "Zang") sets forth the following allegations relevant to the pending motion: plaintiff is a resident of Lexington, Michigan, and at "all relevant times, Zang was engaged in the process of identifying and acquiring a business to purchase in the Midwest." (S. Am. Compl. ¶ 1.) Defendant Alliance Financial Services of Illinois, Ltd. ("Alliance") is an Illinois corporation with its principal place of business in Chicago. (*Id.* ¶ 2.) Defendant Burton Stern[1]

---

[1] Defendant Burton Stern died after the Second Amended Complaint was filed. Plaintiff filed a motion to substitute the deceased with the executor of defendant Burton Stern's will, Todd Stern. [90]. This Court granted that motion on March 25, 2010, pursuant to Federal Rule

("Stern") was a resident of Chicago, Illinois, and was the president of Alliance during the relevant time periods. (*Id.* ¶ 3.) Defendants were "in the business of providing consulting and accounting services" to assist individuals in locating and financing businesses for purchase. (*Id.* ¶ 2.)

On or about June 19, 2007, Zang contacted Alliance in response to an advertisement Alliance placed on a website that "promised companies 'for acquisition with NO principal payments' and that 'Alliance will provide Buyer with Investment Bankers.'" (S. Am. Compl. ¶ 6.) Later that month, Zang traveled to Alliance's Chicago office and met with Stern. (*Id.* ¶ 7.) At that meeting, Stern represented that Alliance "would use its best efforts to locate a company for Zang to purchase" and "would arrange the financing for the purchase through a scheme which made use of viatical settlements as investment securities." (*Id.*) A copy of the diagram Stern gave Zang at this meeting to explain the financing Alliance would obtain for Zang is attached to the Second Amended Complaint at Exhibit 2.

Stern's proposal involved purchasing the right to receive life insurance policy proceeds at death from the original insurance policy holders. (*Id.* ¶ 8.) These purchased life insurance policies are termed viatical settlements. *Id.* The proposal also involved purchasing surety bonds for these policies to ensure maturity within seven years. Next, Alliance would offer the package of policies and sureties as collateral for a bank loan, "the proceeds of which allegedly would be used to purchase the business

---

of Civil Procedure 25(a)(1). [94]. On April 23, 2010, defendant Todd Stern requested permission to adopt and incorporate the arguments of Alliance in the pending Motion to Dismiss. [98]. This Court granted that request. [101].

Zang wished to acquire." (*Id.*) Stern also stated that once Zang purchased a company through Alliance, Zang would pay Alliance a fee of 3% of the closing price of the business, but that such a fee would be due only if Zang closed on a business purchase. (*Id.* ¶ 9.) Stern requested a $5,000 "refundable" retainer, which Zang paid. (*Id.* ¶¶ 9, 10.)

Despite Stern's representations that Alliance would locate potential companies for Zang to purchase, Alliance sent Zang only a few outdated listings for companies found through publicly available internet searches. (S. Am. Compl. ¶ 11.) Just one of those companies met the cash flow criteria Stern informed Zang a potential acquisition should meet. (*Id.*) Furthermore, this company was located in Southern Texas. (*Id.*) Zang had previously informed Stern that he wanted to purchase a company in the Midwest and Stern agreed to locate a Midwest company for acquisition. (*Id.*)

Zang himself located two companies and instructed Alliance to pursue purchases of each. (S. Am. Compl. ¶ 12.) At Stern's insistence, on or about August 16, 2007, Zang gave him checks for $14,500.00, and $18,000.00, supposedly as down payments for the purchases of these companies and to fund Alliance's efforts to secure financing for the deals. (*Id.* ¶¶ 13-16.) Ultimately, neither deal was consummated, and Stern refused to refund any portion of the amounts, totaling $37,500.00, that Zang had paid. (*Id.* ¶¶ 18-20.)

On June 11, 2008, Zang filed his initial complaint against Alliance and Stern [1]. In that complaint, Zang alleged eight counts, all but two of which were based on Illinois state common and statutory law (Counts II-V, VII-VIII). As for the two counts asserted under federal law, in Count I, plaintiff asserted defendants violated Section 10(b) of the

3

Securities Exchange Act because their "material misstatements and deceptive acts were made in connection with the purchase or sale of a security, specifically, life insurance sureties." (Compl. ¶ 25.) In Count VI, plaintiff asserted defendants violated the Lanham Act by making "false" and "misleading" "representations of fact in commercial advertising about [Alliance's] products and services." (*Id.* ¶¶ 49, 48.)

Zang asserted that this Court had federal question jurisdiction under 28 U.S.C. § 1331 over Counts I and VI and supplemental jurisdiction over the Illinois state law claims under 28 U.S.C. § 1367. (Compl. ¶ 4.) Defendants filed a motion to dismiss the initial complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [25]. On May 7, 2009, this Court entered a Memorandum Opinion and Order granting in part and denying in part defendants' motion to dismiss. [46]. In that ruling, this Court dismissed Count VI, which purported to state a claim under the Lanham Act, with prejudice, and gave plaintiff leave to file an amended Count I under the Securities Exchange Act. [*Id.*].

On June 8, 2009, plaintiff filed his First Amended Complaint. [51]. In response, defendants filed a Motion to Dismiss the First Amended Complaint. [53]. On July 16, 2009, plaintiff filed a motion for leave to file a Second Amended Complaint. [59]. Defendants did not object to this motion and this Court granted plaintiff's motion to file a Second Amended Complaint. [62]. On July 24, 2009, plaintiff filed the operative complaint, his Second Amended Complaint.

In the Second Amended Complaint, plaintiff asserts eight counts. In Count I, Zang alleges defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), as well as SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. (S. Am. Compl.

4

¶¶ 22-29.)  Zang also asserts seven claims based on Illinois state common and statutory law (Counts II-VIII).  (S. Am. Compl. ¶¶ 30-62.)

Zang asserts that this Court has federal question jurisdiction, under 28 U.S.C. § 1331, over Count I.  (S. Am. Compl. ¶ 4.)  Zang also asserts complete diversity jurisdiction exists under 28 U.S.C. § 1332 because the parties reside in different states and the amount in controversy exceeds $75,001.

Defendants move to dismiss Count I pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that plaintiff has failed to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA").  Defendants also move to dismiss the remaining counts under Federal Rule of Civil Procedure 12(b)(1).

## II. Legal Standard

### A. Motion to Dismiss pursuant to Rule 12(b)(6) (Count I)

A motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the Complaint to state a claim upon which relief can be granted.  A complaint will withstand a motion to dismiss under Rule 12(b)(6) "if it provides a short and plain statement of the claim showing that the pleader is entitled to relief that is also sufficient to provide the defendant with fair notice of the claim and its basis."  *INEOS Polymers Inc. v. BASF Catalysts*, 553 F.3d 491, 497-98 (7th Cir. 2009) (citations and internal quotation marks omitted).  To demonstrate that he is entitled to relief, a plaintiff must show through his allegations, that the relief sought is plausible, not merely speculative.  *Id.*  In ruling on a motion to dismiss for failure to state a claim, the court must accept the allegations as

5

true and draw all reasonable inferences in favor of the pleader. *Id.*

Since plaintiff alleges fraud under Section 10(b), his complaint is subject to the heightened pleading requirements of Rule 9(b). *Plumbers and Pipefitters Local Union v. Zimmer*, 673 F.Supp.2d 718, 731-32 (S.D.Ind. 2009). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Therefore, a plaintiff claiming fraud "must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate... A complaint alleging fraud must provide ... the who, what, when, where, and how." *Plumbers and Pipefitters Local Union*, 673 F.Supp.2d at 731-32 (internal quotation marks omitted).

Claims asserted under the Securities Exchange Act are also subject to the pleading requirements of the PSLRA. *Id.* Under the PSLRA, a private securities complaint alleging a false or misleading statement must: "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (2005). In addition, "with respect to each act or omission alleged to violate this chapter, [the plaintiff must] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

### B. Motion to Dismiss pursuant to Rule 12(b)(1) (Counts II-VIII)

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of this Court

over the subject matter related in the Complaint.  Where, as here, a motion to dismiss under Rule 12(b)(1) contends that the allegations of the complaint are facially insufficient to show jurisdiction, the applicable standard mirrors that applied under Rule 12(b)(6).  *Royal Towing, Inc. v. City of Harvey*, 350 F. Supp. 2d 750, 752 (N.D. Ill. 2004); see also *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

**III.     Discussion**

Defendants argue that plaintiff has failed to state a federal cause of action in Count I.  Defendants also contend that because no federal cause of action exists, this Court should decline to exercise supplemental jurisdiction over plaintiff's pendent state law claims, Counts II-VIII of the Second Amended Complaint.

**A.     Count I: Securities Exchange Act Claim**

In Count I of plaintiff's Second Amended Complaint, he alleges that defendants violated Section 10(b) of the Exchange Act of 1934, which makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).  Section 10(b) is implemented by SEC Rule 10b-5, which prohibits the making of any untrue statement of material fact, or the omission of a material fact that would render statements made misleading, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.  To have a valid Rule 10b-5 claim, a plaintiff must allege that the defendant

7

(1) made a misstatement or omission, (2) of material fact, (3) with scienter (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused plaintiff's injuries. *Id.; Tricont'l Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 842 (7th Cir.2007).

Defendants argue that plaintiff fails to state a claim in Count I because plaintiff cannot plead all of the necessary elements for a Securities Exchange Act fraud claim, including whether 1) any misstatement or omission was made 2) with scienter, and 3) in connection with the purchase or sale of securities. (Mem. at 3.) In response, plaintiff argues that defendants "ignore the complexity of the scheme upon which [plaintiff's Section 10(b) claim] was based and the specificity with which Zang alleges both defendants' actions within that scheme." (Resp. at 3.)

### 1. An Investment Contract

First, we consider defendants' contention that plaintiff does not allege, in the Second Amended Complaint, the fourth element of a Rule 10b-5 claim that any complained of act was performed in connection with the purchase or sale of securities. The term "security" for purposes of the Securities Exchange Act includes any "investment contract." 15 U.S.C §§ 77b, 78c. The Supreme Court formulated the definition of "investment contract," in *SEC v. W.J. Howey Co.*, as a contract, transaction or scheme whereby: (1) a person invests money (2) in a common enterprise and (3) is led to expect profits produced solely by the efforts of others. 328 U.S. 293, 298 (1946). This definition is commonly referred to as the "Howey test." Defendants contend that plaintiff's allegations do not meet the second or third prongs of the Howey test.

In interpreting the common enterprise prong of the Howey test, the Seventh

Circuit applies a "horizontal commonality" test "under which multiple investors must pool their investments and receive pro rata profits." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984) (citations omitted). Defendants argue that plaintiff does not satisfy the horizontal commonality requirement as he does not and cannot allege that "he shared or otherwise pooled his money with other investors to generate a profit collectively." (Mem. at 3.) Plaintiff admits outright that he "has not pleaded facts to satisfy the common enterprise requirement under a horizontal commonality test" in Count I. (Resp. at 6, 8.) Instead, plaintiff urges this Court to adopt Illinois state law and other District Courts' applications of a "vertical commonality" requirement. *Id.* Under a vertical commonality test, the fortunes of the investor are interwoven with those of the investment promoter. *S.E.C. v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 478 (5th Cir. 1974). Plaintiff argues that he alleges a "vertical commonality" in the Second Amended Complaint. (Resp. at 8.) Defendants do not respond to this argument.

Although the Ninth and Fifth Circuits accept the application of the vertical commonality test, the Seventh Circuit has "strictly adhered" to a horizontal test. *Stenger*, 741 F.2d 144, 146; *see also Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96 (7th Cir.1977) and *Milnarik v. M-S Commodities Inc.*, 457 F.2d 274 (7th Cir. 1972), cert. denied, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144. This Court will not stray from Seventh Circuit precedent, as we are bound to follow the pronouncements of law of the Seventh Circuit. Therefore, we reject plaintiff's suggestion that this Court adopt the vertical commonality test. Since we find that plaintiff does not plead allegations to satisfy the common enterprise requirement of the Howey test, we need not address defendants' argument that plaintiff fails the third prong of the Howey test. Based on the

9

fact that plaintiff does not plead allegations sufficient to satisfy the fourth element of a Rule 10b-5 claim, Count I of the Second Amended Complaint is dismissed with prejudice. However, due to the split in Circuit Courts' interpretation of "common enterprise" as it refers to securities, we address defendants' additional argument that this Court should dismiss Count I because plaintiff does not allege scienter.

### 2. Scienter

Defendants argue that Count I should be dismissed because plaintiff does not "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." (Mem. at 6.) In a securities fraud action under § 10(b), "scienter" refers to a mental state embracing intent to deceive, manipulate, or defraud. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b). As stated above, plaintiff's complaint is subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference" that each named defendant acted with "intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007).

The proper inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S.Ct. 2499, 2509 (2007) (emphasis in original). An inference of scienter "must be more than merely 'reasonable' or 'permissible.'" *Id.* at 2510. It must be

"cogent and compelling, thus strong in light of other explanations." *Id.* Thus, a § 10(b) complaint will survive a motion to dismiss only if the inference of scienter is "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

In support of his contention that he sufficiently alleged scienter, plaintiff cites his allegations that "Alliance took money from him to finance deals, yet afterward scuttled those deals" and "Alliance, through Stern, told Zang his payments were refundable, yet Stern refused to return Zang's money." (Resp. at 12.) In addition, plaintiff generally adds that his Second Amended Complaint, when considered in its entirety, including all facts alleged, "give[s] reasonable inference of scienter." (*Id.*) Defendants argue that plaintiff's allegations are conclusory and insufficient to plead scienter. In reviewing the Second Amended Complaint in its entirety, we do not find that plaintiff pleads particular facts that each defendant acted with knowledge of the statement's falsity or reckless disregard. *See In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2006 WL 3714708 at *9 (N.D.Ill. July 12, 2006) (rejecting plaintiffs' theory that senior executives "must have known" about accounting fraud because misstatements were related to company's core business as an "attempt at an end-run" around the requirement that plaintiffs set forth particularized facts to suggest that defendants acted knowingly or recklessly). In paragraph 25 of the Complaint, plaintiff alleges that "Alliance and Stern made the material misstatement and committed the deceptive acts with the knowledge that they did not intend to use the funds given to acquire a business, but instead intended to misappropriate them." (S. Am. Compl. ¶ 15.) Plaintiff does not allege facts showing that defendants knew when they took money from him to finance deals that the deals would not be completed and the money would not be returned. Instead, plaintiff only

11

generally alleges defendants' actions and knowledge. These allegations do not meet the high pleadings standards of the PSLRA and Rule 9.

In addition, a § 10(b) complaint will survive a motion to dismiss only if the inference of scienter is at least as compelling as any opposing inference one could draw from the facts alleged. In this case, plaintiff, in the Second Amended Complaint, pleads an opposing basis for defendants' actions regarding plaintiff's allegation that "Stern scuttled the Frontline deal by refusing to submit the loan request to Alliance's bank." (S. Am. Compl. ¶ 15.) Plaintiff explains that "Stern claimed that he refused to submit the loan request because the amount he had proposed Zang offer to purchase Frontline was too high." (*Id.*) Stern also claimed that he was not obligated to return any of the funds advanced "because a closing did not take place." (*Id.*) As this allegation is compelling for the basis of defendants' actions, we do not find an inference of scienter. Plaintiff's inference of scienter is weak and ill-supported, and is not "strong in the light of other explanations." *See Tellabs*, 127 S.Ct. at 2510.

We do not find that plaintiffs's allegations in the Second Amended Complaint establish the required "strong inference" of scienter. For this and the other reasons set forth above, Count I of plaintiff's Second Amended Complaint is dismissed with prejudice.

### 3. Misleading Statements

As an additional basis to dismiss Count I, in one paragraph, defendants argue that plaintiff does not satisfy the pleading requirements of the PSLRA by failing to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is

made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." (Mem. at 6.) In response, plaintiff argues that his allegations "cast a doubt on the veracity of the statements" which he claims are misleading. (Resp. at 11.) We will not address these limited arguments because plaintiff does not meet other necessary elements for a Securities Exchange Act fraud claim.

### B. Counts II-VIII: State Law Claims

Next, defendants argue that, if this Court dismisses Count I, a federal question is not present and plaintiff's pendent state law claims should be dismissed for lack of subject matter jurisdiction. (Mem. at 7-8.) Plaintiff claims diversity jurisdiction in paragraph 4 of the Second Amended Complaint, alleging "complete diversity jurisdiction exists under 28 U.S.C. § 1332, as Zang is a Michigan citizen, both defendants are Illinois citizens, and the amounts in controversy in Counts II, III, V and VI exceed $75,001, respectively..." (S. Am. Compl. ¶ 4.) In Counts II, III, V and VI, plaintiff "prays for punitive damages in an amount greater than $37,501 in addition to the $37,500 Zang alleges as compensatory damages." (Resp. at 4.) In these Counts, plaintiff claims fraud and breach of fiduciary duty. Under 28 U.S.C. § 1332, federal courts have jurisdiction over civil suits between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In its reply brief, defendants challenge the amount in controversy sought in Counts II, III, V and VI. (Reply at 1.) Where, as here, there are multiple counts claiming a sum in excess of $75,000, so long as the amount in controversy requirement is satisfied with respect to one count or the proper aggregation of counts,

13

we need not analyze each count individually. *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 548 (7th Cir. 2008).

"Where punitive damages are required to satisfy the jurisdictional requirement in a diversity case, a two-part inquiry is necessary. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (internal quotation marks omitted); *Cadek v. Great Lakes Dragaway*, 58 F.3d 1209, 1211-12 (7th Cir. 1995). We give separate consideration to this question which is properly addressed under this lenient standard in contrast to the heightened pleading requirements of Rule 9(b) and the PSLRA.

When a claim for punitive damages comprises "the bulk of the amount in controversy," the Court gives the claim close scrutiny to ensure the punitive damages claim is not excessive or unrealistic. *LM Ins. Corp.*, 533 F.3d at 551; *Smith v. American Gen. Life & Acc. Ins. Co., Inc.*, 337 F.3d 888, 893 (7th Cir. 2003); *Anthony*, 75 F.3d at 315; *see, e.g., Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 979- 80 (7th Cir. 2000) (dismissing suit seeking $600 in compensatory damages and $75,000 in punitive damages because it was highly unlikely state court would allow such an award).

In Count V of the Second Amended Complaint, plaintiff alleges that Stern breached his fiduciary duty to plaintiff "when he: (1) induced Zang to give him $37,500.00 by stating that Zang would get the money back; (2) delayed and ultimately killed the Frontline deal; (3) failed to draft or execute a letter of intent for the Pine Tech

14

deal and failed to present it to Alliance's lender banks; (4) did not seek to locate a company for Zang aside from sending Zang an outdated list of companies from publicly available internet sites; (5) refused to send a written request for information and statement of Zang's financial backing to the broker of a fabricated metal products company; (6) refused to return Zang's $37,500; and (7) generally carried out a scheme which defrauded Zang and thus was against Zang's best interests." (S. Am. Compl. ¶ 45.)

First, we must consider whether punitive damages are recoverable as a matter of state law in this case. Illinois courts have held that punitive damages are available for such claims. *LM Ins. Corp.*, 533 F.3d at 551 *(citing Franz v. Calaco Development Corp.*, 818 N.E.2d 357, 375 (2004) ("Punitive damages are available as a matter of law for a breach of fiduciary duty")). Therefore, our analysis must continue to consider if it is "legally certain that the plaintiff will be unable to recover the requisite jurisdictional amount." *Id.* Defendants argue that plaintiff does not allege the requisite gross fraud, malice or willfulness on behalf of the defendants. (Reply at 2.)

While this Court closely scrutinizes plaintiff's claim, it finds that it is not legally impossible for plaintiff to recover more than $37,500 in punitive damages based on his $37,500 in compensatory damages. Such a punitive damage award is not unreasonable in light of the alleged facts of the case and is not out of proportion to the compensatory damages in controversy. Here, plaintiff has alleged that "Alliance and Stern made the material misstatements and committed the deceptive acts with the knowledge that they did not intend to use the funds given to acquire a business, but instead intended to misappropriate them." (S. Am. Compl. ¶ 25.) Plaintiff also alleges

15

that "Alliance and Stern intended that Zang rely upon their materially unfair or deceptive acts and so caused Zang to deliver to Stern a $5,000.00 retainer, $14,500.00 for the Frontline deal, and $18,000.00 for the Pine Tech deal" (S. Am. Compl. ¶ 33.) and that "Zang advertised goods with the intent not to sell them as advertised...." (S. Am. Compl. ¶ 48.)

In addition, this Court is guided by the ratio of punitive damages to compensatory damages sought. The ratio of $34,501 in punitive damages to $37,500 in compensatory damages is 1 to 1. It is not near the proportions found unreasonable or unrealistic in *Smith*, 337 F.3d at 895-96 (29 to 1), and *Del Vecchio*, 230 F.3d at 979-80 (125 to 1). It is more akin to the ratio of 2.75 to 1 found acceptable in *LM Insurance*, 533 F.3d at 552. Therefore, defendants' request that this Court dismiss Counts II-VIII of the Second Amended Complaint is denied.

## IV. CONCLUSION

For the reasons stated above, defendants' motion [67] is granted in part and denied in part.

**ENTERED:**

*[signature]*

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: September 27, 2010**